IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

BARBARA L. GALLI,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C09-0092

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      A.    Galli's Education and Employment Background . . . . . . . . . . . . . . . 4
      B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . . . . 5
            1.    Galli's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
            2.    Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . . . 6
      C.    Galli's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.    CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      B.    Objections Raised by Claimant . . . . . . . . . . . . . . . . . . . . . . . . . . 12
            1.    Severe Mental Impairment . . . . . . . . . . . . . . . . . . . . . . . 12
            2.    Galli's Ability to Stand and Walk . . . . . . . . . . . . . . . . . . 16
      C.    Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Brenda L. Galli on July 14, 2009, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Galli asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Galli requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On April 7, 2006, Galli filed an application for SSI benefits. In her application, Galli alleged an inability to work since July 1, 2005 due to back problems, fibromyalgia, restless leg syndrome, depression, sleeping disorder, tendinitis of the right elbow, acid reflux, and hip bursitis. Galli's application was denied on June 15, 2006. On January 12, 2007, Galli's application was denied on reconsideration. On February 20, 2007, Galli requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 8, 2008, Galli appeared via video conference with her attorney before ALJ Debra Bice. Galli and vocational expert Roger F. Marquardt testified at the hearing. In a decision dated November 28, 2008, the ALJ denied Galli's claims. The ALJ determined that Galli was not disabled and not entitled to SSI benefits because she was functionally capable of performing other work that exists in significant numbers in the national economy. Galli appealed the ALJ's decision. On May 12, 2009, the Appeals Council denied Galli's request for review. Consequently, the ALJ's November 28, 2008 decision was adopted as the Commissioner's final decision.

On July 14, 2009, Galli filed this action for judicial review. The Commissioner filed an Answer on October 20, 2009. On December 2, 2009, Galli filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she could perform other work that exists in significant numbers in the national economy. On January 27, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's

decision. On February 9, 2010, Galli filed a reply brief. On January 6, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision 'if the ALJ's findings are supported by substantial evidence on the record as a whole[.]'" *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.' *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the
> evidence and it allows for the possibility of drawing two
> inconsistent conclusions, thus it embodies a zone of choice
> within which the [Commissioner] may decide to grant or deny
> benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Moore*, 572 F.3d at 522 ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005)."); *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001) ("As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it either because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.").

## IV. FACTS

### A. Galli's Education and Employment Background

Galli was born in 1963. She is a high school graduate. While in school, she took special education classes in reading and math. At the administrative hearing, the ALJ questioned Galli about her abilities in math and reading:

> Q:    Are you able to do basic math like adding, subtracting,
> multiplying, and dividing?
> A:    Yes.

4

| Q: | Are you able to read? |
|---|---|
| A: | Yes. I just can't remember what I read. |
| Q: | Now has that always been the case? |
| A: | Yes. |
| Q: | When you're reading, do you understand what you're reading? |
| A: | Yes, until I get done. Then I can't remember what I just read. |

(Administrative Record at 12.)

The record contains a detailed earnings report for Galli. The report covers Galli's employment history from 1975 to 2008. She had no earning from 1975 to 1978. She had nominal earnings in 1979 ($281.62) and 1980 ($1,072.45). She had no earnings from 1981 to 1984. She had nominal earnings again in 1985 ($146.20) and 1986 ($1,484.88). She had no earnings in 1987. From 1988 to 1991 she earned between $226.00 (1990) and $1,367.25 (1988). She had no earning from 1992 to 1997. In 1998, Galli earned $1,454.29. She has no further earnings since 1999.

### B. Administrative Hearing Testimony

#### 1. Galli's Testimony

At the administrative hearing, the ALJ questioned Galli about her physical problems and limitations. Galli testified that she has low back and neck problems that cause burning and pain in her muscles. She indicated that bending, squatting, and lifting are difficult. Galli also noted that she has carpal tunnel in both arms, numbness in her fingers, knee and ankle pain, and fibromyalgia. According to Galli, her physical problems limit her ability to pull or push things like a mop or broom. Specifically, Galli explained that when she cleans her house, she has to:

> take a lot of breaks. They last about a half an hour before they start bothering me. Like standing doing dishes, it takes me a couple hours just to do a sink full. And vacuuming, mopping, sweeping, folding laundry, just typical housework, anything that motion of pushing, swirling, it just brings it on so bad I have to go lay down. And then after laying down for a little bit, it starts hurting again, so I have to get up and move. So I'm constantly up and down.

Galli and the ALJ also discussed her difficulties with anxiety. Galli testified that she doesn't go to a lot of her children's school activities because she has anxiety attacks when she is around "a lot of people." Galli also stated that she has difficulty going to the grocery store when there are a lot of people in the store. Specifically, she stated "I try to pick [a time] when hardly anybody's in [the grocery store]. If there is too many, I have to leave. I just leave my cart and go."[1]

The ALJ also asked Galli whether she had any difficulties with her memory. Galli replied that she has "lots of problems" with her memory. She explained her memory problems as follows:

> A:   I seem to forget. I'll take the hardest one first. It's like driving somewhere, and I literally forget where I'm at and where I'm going. And I have to pull over and try to get my head together, realize where I'm going.
> Q:   About how often does that happen?
> A:   Every time I drive.
> Q:   Even to like the store?
> A:   Yes. Even coming here I had to pull off and try to think, now where's this road and this road, and where am I at? And I made it.

(Administrative Record at 27-28.) Additionally, Galli testified that she has difficulties with concentration, and her minds skips around a lot making it difficult to finish projects she starts.

### 2.   *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a hypothetical for an individual who is able to perform:

> light work with an occasional ability to bend, squat, stoop, kneel, or crawl. Can perform occasional repetitive flexion of the right wrist. Should not be exposed to extreme cold temperatures or vibrations. And that the individual is limited

---

[1] *See* Administrative Record at 27.

> to unskilled work that does not involve high speed assembly
> line production or quotas.

(Administrative Record at 38.) The vocational expert testified that under such limitations, Galli could perform the following work: (1) children's attendant (1,000 positions in Iowa and 105,000 positions in the nation), (2) usher (850 positions in Iowa and 100,000 positions in the nation), and (3) bakery worker (925 positions in Iowa and 72,000 positions in the nation). The ALJ changed her hypothetical to include limitations of sedentary work, needing to lie down for two to three hours each day on an unscheduled basis, and missing an average of four days of work per month. The vocational expert testified that under such limitations, there would be no jobs that Galli could perform on a competitive basis.

### C. Galli's Medical History

In September and October 2005, Galli visited Dr. Varsha Bhan, M.D., complaining of back and neck pain. Dr. Bhan opined that her pain was musculoskeletal in origin. Dr. Bhan recommended medication as treatment. Dr. Bhan also referred Galli to Dr. Shahin Bagheri, M.D. for further evaluation.

Galli met with Dr. Bagheri on March 9, 2006 for her evaluation. Dr. Bagheri thoroughly reviewed Galli's past medical history:

> [Galli] has been dealing with the lower back pain for at least a year. . . . She has been taking Ibuprofen and also Lortab with no relief.
>
> [Galli's] sleep is quite nonrestorative. She wakes up several times at night with pain and has difficulty going to sleep. Her main complaint today is a recent hip pain in the left side which radiates to the knee and then ankle and feet. This is a dull pain and does not change with [her] position. She also complains of burning in the right elbow. There is some pain in the medial aspect of the elbow. Shoulders also are stiff and painful. She does not have swelling of the joints. . . . Her morning stiffness lasts all day. She has been under a lot of stress and has been recently started on Lexapro for anxiety and depression. . . .

(Administrative Record at 223.) Upon examination, Dr. Bagheri found Galli had 18/18 myofascial tender points. Dr. Bagheri diagnosed her with diffuse arthralgias, myalgias, and myofascial tender points consistent with fibromyalgia. Dr. Bagheri further diagnosed Galli with nonrestorative sleep with possible restless leg syndrome, right-sided medial epicondylitis, depression, and anxiety. Dr. Bagheri suggested weight loss, physical therapy, aggressive treatment of her depression and anxiety, and medication as treatment.

On May 10, 2006, Dr. Gary Cromer, M.D., reviewed Galli's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Galli. Dr. Cromer determined that Galli could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Cromer further found that Galli could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Cromer limited Galli to occasional activities involving repetitive flexion of the right wrist. Dr. Cromer found no visual or communicative limitations. Dr. Cromer determined that Galli should avoid concentrated exposure to extreme cold and vibration.

On May 25, 2006, Galli was referred by DDS to Michele McNeal, Ed.S., and Dr. Owen B. Duffy IV, Ph.D., for a mental status evaluation. The evaluators noted that beginning in 2005, Galli started to:

> isolate herself. She now has trouble being around large groups of people as she feels anxious and overwhelmed. Prior to last year, [Galli] states that socializing in structured settings was not an issue for her. Now she is nervous and self-conscious. She is forgetful and struggles concentrating. She reports that recently she has a poor memory and must rely on lists and a high degree of structure in her day. She is beginning to misplace items frequently. Finally, her ability to cope with stress or frustration is less. She feels easily upset and irritated.

(Administrative Record at 250.) The evaluators concluded that Galli is able to:

> understand and remember simple and complex instructions,
> procedures and locations. She will struggle carrying out tasks
> and keeping up with the expected pace due to the degree of
> pain and fatigue she experiences. [Galli] may have difficulty
> maintaining concentration and attention. She will be able to
> get along well with co-workers, supervisors, and the general
> public. She should be able to exercise independent judgment
> while at work. She appears to have the skills necessary to
> manage any benefits that she may be entitled to.

(Administrative Record at 251.) The evaluators assessed Galli with a Global Assessment of Functioning ("GAF") score of 65.

On June 14, 2006, Dr. David Beeman, Ph.D., reviewed Galli's medical records and provided DDS with a Psychiatric Review Technique assessment for Galli. Dr. Beeman diagnosed Galli with major depressive disorder. Dr. Beeman determined that Galli had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Beeman concluded that:

> The preponderance of evidence in file from a psychological
> perspective indicates [Galli] has no more than mild restrictions
> in ADL [(activities of daily living)] completion, social
> functioning, and maintenance of concentration, persistence,
> and pace. The CE [(consultative examination)] notes a grossly
> intact mental status, estimates a mild range GAF, and opines
> no significant mentally based limitations. [Galli's] daily
> functioning is grossly intact. The treating primary care
> provider does not note significant symptoms or limitations as
> well. [Galli] has been diagnosed with a medically
> determinable mental impairment but it is considered to be
> nonsevere.

(Administrative Record at 266.)

In August 2006, Galli visited Dr. Bagheri complaining of restless leg syndrome, active fibromyalgia, diffuse pain, and stress. Upon examination, Dr. Bagheri noted no active synovitis, but multiple myofascial tender points. Dr. Bagheri diagnosed fibromyalgia, restless leg syndrome, depression, and anxiety. Dr. Bagheri recommended

exercise to combat the fibromyalgia, and prescribed Cyclobenzaprine and Mirapex to help her sleep and limit the restless leg syndrome.

On August 22, 2006, Galli met with Brenda Keenan, LMSW ("Keenan"), at the Abbe Center for Community Health in Cedar Rapids, Iowa, for evaluation and treatment of her depression. Galli reported the following symptoms of depression: sadness; discouragement; difficulty sleeping; increased appetite when stressed; loss of energy, interest, motivation, and concentration; feelings of guilt, worthlessness, helplessness, and hopelessness; slowed thinking; and irritability. Galli also reported that she fears leaving her home because it results in panic attacks and anxiety. She also informed Keenan that she was "experiencing more severe memory loss. A few days ago, [Galli] could not remember her kitten's name and is experiencing feelings of being lost when she is out driving around in familiar areas."[2] Keenan diagnosed Galli with major depressive disorder, social phobia, and problems in social environments. Keenan assessed a GAF score of 43. Keenan recommended therapy on a tri-weekly basis as treatment.

On January 3, 2007, Dr. John Tedesco, Ph.D., reviewed Galli's medical records and provided DDS with a Psychiatric Review Technique assessment for Galli. Dr. Tedesco's assessment was a reconsideration of Dr. Beeman's earlier assessment. Dr. Tedesco diagnosed Galli with major depressive disorder. Dr. Tedesco determined that Galli had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Tedesco concluded that:

> Since the initial assessment, [Galli] alleges a worsening of her physical conditions. Mental status is less clear. Objective evidence from [Galli's] treating source indicates the [sic] she has undergone a medication change. This change has resulted in her feeling that things are 'going well' in regards [sic] to her depression.

(Administrative Record at 334.)

---

[2] *See* Administrative Record at 371.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Galli is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id.* The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and

[the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Galli had not engaged in substantial gainful activity since March 31, 2006. At the second step, the ALJ concluded from the medical evidence that Galli had the following severe combination of impairments: fibromyalgia, patellofemoral syndrome in the left knee, degenerative disc disease in the lumbar spine, history of bilateral medial epicondylitis, obesity, and a history of substance abuse. At the third step, the ALJ found that Galli did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Galli's RFC as follows:

> [Galli] has the residual functional capacity to perform light work[.] . . . She can occasionally bend, squat, stoop, kneel and crawl. She can occasionally perform repetitive flexion of the right wrist. She cannot tolerate extreme cold temperatures or vibrations. She is limited to unskilled work that does not involve high speed assembly line production or quotas.

(Administrative Record at 54.) Also at the fourth step, the ALJ determined that Galli had no past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Galli could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Galli was not disabled.

## B.  Objections Raised by Claimant

Galli argues that the ALJ erred in two respects. First, Galli argues that the ALJ failed to fully and fairly develop the record with regard to whether she has a severe mental impairment. Second, Galli argues that the ALJ failed to properly consider her subjective allegations as to her ability to stand and walk throughout the course of a single day.

### 1.  Severe Mental Impairment

Galli argues that contrary to the ALJ's decision, her mental impairment is severe, and the ALJ should have considered her mental impairments in determining whether she

is disabled. Specifically, Galli contends that the medical evidence in the record, particularly her GAF scores between August 2006 and July 2007, shows a mental impairment of a "moderate" to "serious" degree.

While the ALJ thoroughly discussed and applied the requirements for determining the severity of a mental impairment under the Social Security Regulations, the ALJ failed to consider pertinent medical evidence in making her determination. The record demonstrates that the ALJ's discussion and conclusions rely almost exclusively on medical evidence prior to August 2006, the time period Galli began psychological therapy at the Abbe Center for Community health. This is significant because prior to August 2006, Galli's only GAF score was 65, assessed by McNeal and Duffy in May 2006, as part of a mental status evaluation for DDS.[3] In June 2006, based on McNeal's and Duffy's evaluation, a DDS psychological reviewing Galli's medical records determined that Galli had only mild restrictions of: (1) activities of daily living, (2) maintaining social functioning, and (3) maintaining concentration, persistence, or pace. In August 2006, however, Galli's GAF score was 43.[4] Continuing in September 2006 through July 2007, Galli's GAF scores ranged from 45 to 58.[5] In January 2007, a second DDS psychologist

_____

[3] *See* Administrative Record at 252. Global Assessment of Function (GAF) is a "numeric scale (0 through 100) used by mental health clinicians and physicians to subjectively rate the social, occupational and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living." *See* Global Assessment of Functioning at http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning.

A GAF score of 65 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

[4] A GAF score of 43 indicates "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning." *See* Global Assessment of Functioning at http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning.

[5] *See* Administrative Record at 353 (GAF score of 53 in July 2007), 355 (GAF score of 45 in June 2007), 357 (GAF score of 58 in June 2007), 359 (GAF score of 53 in May 2007), 361 (GAF score of 58 in April 2007), 364 (GAF score of 53 in April (continued...)

reviewed Galli's medical records, and again concluded that Galli had only mild restrictions of: (1) activities of daily living, (2) maintaining social functioning, and (3) maintaining concentration, persistence, or pace. In his notes, the DDS psychologist makes no reference to Galli's GAF scores from August 2006 to January 2007, and offers no indication that he considered such evidence. Similarly, in her decision, the ALJ neither references Galli's GAF scores between August 2006 and July 2007, nor suggests that she even considered her GAF scores for that time period. The ALJ's conclusions regarding Galli's mental impairments are based solely on the conclusions of McNeal and Duffy, and the two DDS reviewing psychologists.

A GAF score is a determination based on a scale of 1 to 100 of a "clinician's judgment of the individual's overall level of functioning." *Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (quoting *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000)). The Eighth Circuit Court of Appeals has noted that a GAF score between 41 and 50 "reflects *serious limitations* in the patient's general ability to perform basic tasks of daily life." *Brueggemann*, 348 F.3d at 695 (emphasis added). A GAF score of 51 to 60 is "indicative of 'moderate symptoms' or 'moderate difficulty in social, occupational, or school functioning.'" *Lacroix v. Barnhart*, 465 F.3d 881, 883 (8th Cir. 2006) (quotation omitted). In *Pate-Fires v. Astrue*, 564 F.3d 935, 944 (8th Cir. 2009), the Eighth Circuit found that a GAF score in the 51-60 range was not "inconsistent with [an] opinion that [the claimant] was permanently disabled for any type of employment, nor does it constitute substantial evidence supporting the ALJ's conclusion she is not disabled." *Id.* (citing *Colon v. Barnhart*, 424 F. Supp. 2d 805, 813-14 (E.D. Pa. 2006) ("indicating an ALJ must consider a claimant's total GAF

---

[5](...continued)

2007), 366 (GAF score of 45 in March 2007), 367 (GAF score of 51 in October 2006), and 370 (GAF score of 50 in September 2006). A GAF score between 51-60 indicates "[m]oderate symptoms OR any moderate difficulty in social, occupational, or school functioning." *See* Global Assessment of Functioning at http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning.

score history, and remanding the case for reconsideration where ALJ failed to consider or discuss claimant's lowest scores[.]")).

Here, Galli's GAF scores, in the period from August 2006 to July 2007, ranged between 43 and 58. Such scores represent "serious" and "moderate" symptoms which effect Galli's ability to perform basic tasks of daily life and cause difficulty in social and occupational functioning. *See Lacroix*, 465 F.3d at 883; *Brueggemann*, 348 F.3d at 695. The Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)). Because the ALJ failed to address or consider Galli's GAF scores from August 2006 to July 2007, the Court finds that the ALJ failed to fully and fairly develop the record with regard to Galli's mental impairments. Therefore, remand is necessary. *See Pate-Fires v. Astrue*, 564 F.3d at 944 (citing *Colon*, 424 F. Supp. .2d at 813-14 for the proposition that remand is necessary when an ALJ fails to consider or discuss a claimant's GAF scores).

On remand, the ALJ shall fully and fairly develop the record with regard to Galli's GAF scores between August 2006 and July 2007. Specifically, the ALJ must consider Galli's limitations in light of the level of functioning for GAF scores between 43 and 58 as discussed in the *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000). *See Brueggemann*, 348 F.3d at 695; *Hudson ex rel. Jones*, 345 F.3d at 662 n.2. Additionally, because the ALJ relied on medical opinions which either pre-dated August 2006, or failed to address Galli's GAF scores for the pertinent time period, the Court determines that the ALJ should order a new consultative examination of Galli as to her mental impairments. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (medical examinations and tests may be ordered when the medical records presented to the

ALJ constitute insufficient medical evidence to determine whether the claimant is disabled).

### 2. *Galli's Ability to Stand and Walk*

Galli argues that the ALJ's RFC assessment is flawed because the ALJ failed to properly consider her subjective allegations of pain and disability, in particular her ability to stand and walk. Galli refers to the following testimony at the administrative hearing to support her argument:

> Q: Do you have restless leg syndrome?
>
> A: Yes.
>
> Q: What happens with that?
>
> A: My legs get really weak and jittery, achy. And then if I overdo a day at walking, standing, or sitting, when I go to bed at night my legs just jump off the bed for the muscle spasms.
>
> Q: Okay. Now when you say if you overdo, give me an example of a day where you've overdone it. and your legs are bad at night.
>
> A: Okay. For instance like trying to clean my house, which I take a lot of breaks. They last about a half an hour before they start bothering me. Like standing doing dishes, it takes me a couple hours just to do a sink full. And vacuuming, mopping, sweeping, folding laundry, just typical housework, anything that motion of pushing, swirling, it just brings it on so bad I have to go lay down. And then after laying down for a little bit, it starts hurting again, so I have to get up and move. So I'm constantly up and down.

(Administrative Record at 19-20.) At the administrative hearing, Galli and her attorney also discussed her ability to stand and walk:

> Q: And standing? How long can you stand without having to sit or change positions?

| A: | Well, today for an hour, but I walked -- or a half an hour, and I walked around. And it kind of relieved it, but it's coming back. |
|---|---|
| Q: | So during the day, your testimony is you're up and down? |
| A: | All the time, yes. I'm sitting, standing, laying down. I keep going a routine like that. |
| Q: | So about equal one third of the day you're -- |
| A: | I'm down. |
| Q: | -- lying down? |
| A: | Yes. |

(Administrative Record at 32-33.) Galli concludes that "[t]his matter should be remanded for a proper assessment of [Galli's] credibility, particularly her allegations regarding her inability to stand and walk for extended periods of time. The ALJ should then make a new assessment of [Galli's] residual functional capacity and determine whether there are other jobs [she] can perform in light of her age, education, past work, and residual functional capacity."[6]

An ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix*, 465 F.3d at 887 (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)).

An ALJ must also assess a claimant's credibility. When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the

---

[6] *See* Galli's Brief (docket number 11) at 18.

claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility

determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In her decision, the ALJ properly set forth the law for making credibility determinations under *Polaski* and the Social Security Regulations.[7] The ALJ failed to apply the law, however, in determining the credibility of Galli's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's subjective allegations and the record as a whole. *See Baker*, 159 F.3d at 1144; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). In her decision, the ALJ provides six paragraphs detailing Galli's testimony, however, the ALJ provides little explanation, let alone any conclusions regarding her credibility determination. At most, the ALJ generically and randomly notes in the middle of her discussion of Galli's testimony, that "[t]he claimant's testimony is inconsistent with treating records." The ALJ supports her conclusion with reference to one treatment note which states:

> [Galli] was able to clean out her office space that was assigned as part of her homework assignment last visit. [Galli] was not able to sew her curtains, however she did work on going through recipes and lessening her nap taking during the day. [Galli] is motivated to go through more of her items in order to prepare for a garage sale in the near future. [Galli] desires to continue to work on finishing her recipes, cleaning out her kitchen and re-arranging her 2 boys rooms.

---

[7] *See* Administrative Record at 55-56.

(Administrative Record at 364.)  One treatment note which discusses the ability to clean out an office space and a *desire* to clean a kitchen, go through items for a garage sale, go through recipes, and re-arrange a child's bedroom, without more, is insufficient for discrediting the subjective allegations of a claimant.  The ALJ provides no other reasons for discounting Galli's testimony, and offers nothing in terms of the *Polaski* factors and how those factors relate to Galli's subjective testimony and credibility.  Moreover, the ALJ's decision does not address Galli's allegations regarding her difficulty with standing, walking, or sitting for extended periods, nor does the ALJ address Galli's claim of needing to lay down for up to one-third of an eight-hour workday.  Because the ALJ's decision lacks any discussion of the reasons for discrediting Galli, except that her allegations are inconsistent with one treatment record, and lacks full consideration of all of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Galli's credibility.  On remand, the ALJ shall set forth in detail her reasons for finding Galli's subjective allegations to be credible or not credible.  If on remand, the ALJ finds Galli's testimony not to be credible, the ALJ shall fully explain the reasons for her credibility determination and fully explain the inconsistencies between Galli's subjective allegations and the evidence in the record.  The ALJ should also address how Galli's credibility determination relates to Galli's RFC, particularly her ability to stand and walk.

### C.  Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g).  The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*,
833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where
"the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of
Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of
denial of benefits is justified where no substantial evidence exists to support a finding that
the claimant is not disabled). In the present case, the Court concludes that the medical
records as a whole do not "overwhelmingly support a finding of disability." *Beeler*,
833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with
regard to Galli's mental impairments, and failed to provide adequate reasons for rejecting
Galli's subjective allegations of disability. Accordingly, the Court finds that remand is
appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for
further proceedings. On remand, the ALJ shall develop the record fully and fairly with
regard to Galli's mental impairments. Specifically, the ALJ must consider Galli's
limitations in light of the level of functioning for GAF scores between 43 and 58 as
discussed in the *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text
Revision 2000). The ALJ must also order a new consultative examination for Galli as to
her mental impairments. Lastly, The ALJ must also consider all of the evidence relating
to Galli's subjective allegations of disability, address her reasons for crediting or
discrediting those allegations, properly apply the *Polaski* factors when determining Galli's
credibility, address how Galli's credibility determination relates to Galli's RFC,
particularly her ability to stand and walk.

### VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this ___23rd___ day of March, 2010.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA